# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JACK RAY WAGNER, JR.,

      **Plaintiff,**

v.                                      **Civil Action No. 2:09cv28**
                                                  **(Judge Maxwell)**

WEXFORD MEDICAL HEALTH
SERVICES, TRISTEN TENNEY,
DR. DAVID PROCTOR AND
TERESA WAID,

      **Defendants.**

## REPORT AND RECOMMENDATION

### I.   Procedural History

The *pro se* plaintiff initiated this civil rights action on February 24, 2009. In the complaint (dckt. 1), the plaintiff asserts that the defendants were deliberately indifferent to his serious medical needs with regard to a hernia condition and a colostomy.

On June 15, 2009, the undersigned conducted a preliminary review of the complaint and determined that Wexford Health Services was not an appropriate defendant in this case. (Dckt. 10). Moreover, the undersigned determined that the plaintiff failed to state a claim against Teresa Waid. Accordingly, it was recommended that those defendants be dismissed from this case with prejudice. In addition, the undersigned recommended that the plaintiff's claims proceed against Tristen Tenney ("Tenney") and Dr. David Proctor ("Dr. Proctor").

The Report and Recommendation was adopted in its entirety by the District Judge on

December 3, 2009. (Dckt. 17). Consequently, Wexford Health Services and Teresa Waid were dismissed from the case at that time. (Dckt. 18). Summonses were issued for defendants Tenney and Proctor (dckt. 19-20) and service was executed on December 9, 2009 (dckt. 22-23).

Dr. Proctor and defendant Tenney filed an Answer to the complaint on December 28, 2009. (Dckt. 25). On December 31, 2009, the Court issued a First Order and Notice Regarding Discovery. (Dckt. 26). Pursuant to that Order, discovery was to be completed by April 30, 2010, and dispositive motions filed by May 30, 2010.

On May 26, 2010, defendants Tenney and Dr. Proctor filed a Motion for Summary Judgment. (Dckt. 27). Because the plaintiff is proceeding without counsel in this case, the Court issued a Roseboro Notice on May 28, 2010, advising the plaintiff of his right to file a response to the defendants' motion. (Dckt. 29). No response has been filed. This case is therefore before the undersigned for a Report and Recommendation on the defendants' summary judgment motion.

## II.    Contentions of the Parties

### A.    The Complaint

In the complaint, the plaintiff asserts that he was stabbed in 2006. Dckt. 1 at 4. As a result, he had received a skin graft and a colostomy prior to his incarceration. Id. The plaintiff asserts, however, that his surgery was not complete when he was taken into custody. Id. Moreover, he asserts that the skin graft caused a hernia the size of a watermelon. Id. Therefore, the plaintiff must use a binder to "hold his guts in place." Id. Nonetheless, the binder is difficult to put on and interferes with the plaintiff's colostomy. Id. The plaintiff asserts that both medical conditions can be fixed, but that the defendants refuse to provide him the appropriate treatment or to send him to an outside surgeon. Id. He also asserts that if he does not receive proper treatment, his condition

could easily become life threatening.  Id.

As relief, the plaintiff seeks to have the defendants pay for his medical treatments.  Id. at 5. In addition, he seeks compensation for the cruel and unusual punishment he has received, including pain and suffering, mental stress, embarrassment and lack of activity.  Id.  The plaintiff also seeks to have Wexford Medical Services removed from the Huttonsville Correctional Center and for him to be sent to a surgeon as soon as possible.  Id.

The plaintiff asserts that he has exhausted his administrative remedies.  Id. at 2.

**B.    The Defendants' Motion for Summary Judgment**

In their motion, the defendants admit that the plaintiff was stabbed prior to his incarceration and had surgery prior to his admission to a correctional facility.  Dckt. 28 at 2.  The defendants further admit that the plaintiff had a skin graft and a colostomy and that he has been prescribed an abdominal binder to hold his hernia in place.  Id.  The defendants admit that, while at Huttonsville, the plaintiff's hernia condition was treated by Dr. Proctor.  Dckt. 27, Att. 1 (Affidavit of David Proctor, D.O.) at ¶ 3.  Dr. Proctor provides the following medical history regarding the plaintiff's hernia condition:

(1) The plaintiff arrived at Huttonsville Correctional Center with a post-operative hernia and a colostomy.  Id. at ¶ 4.

(2) While at Huttonsville, the plaintiff was provided treatment for his hernia in the form of abdominal binders to keep his hernia in place.  Id. at ¶ 5.

(3) In his professional opinion, the plaintiff's hernia condition could be treated through non-surgical means, *i.e.*, abdominal binders, and surgery was not required.  Id. at ¶ 6.

(4) While at Huttonsville, the plaintiff's colostomy was functioning properly.  Id.

(5) On December 17, 2008, the plaintiff was referred to Dr. Cynthia Graves at West Virginia University Hospital for a surgical consult. Id. at ¶ 7-8.

(6) Dr. Graves noted the large size of the plaintiff's abdominal hernia but found a low risk for strangulation. Id. at ¶ 8; Ex. A. Dr. Graves agreed that conservative treatment (non-surgical) was appropriate unless the plaintiff's condition worsened. Id. She further found that if the binders were used properly, the plaintiff could remain medically stable indefinitely. Id. Dr. Graves agreed that the colostomy was functioning properly and that surgical repair was elective. Id.

(7) The plaintiff was released from incarceration in December 2009 and Dr. Proctor has not treated him since that time. Id. at ¶ 9.

Based on the plaintiff's treatment, the defendants assert that the record shows that the plaintiff's hernia condition was not ignored. Dckt. 28 at 4. Moreover, the defendants assert that hernia binders were appropriate treatment for the plaintiff's hernia condition, that they did not interfere with his colostomy and that surgery for his hernia condition was not medically necessary. Id. The defendants further assert that the plaintiff's request for a surgical consult in his complaint is not well taken as the plaintiff had already received such consult with Dr. Graves before the complaint was filed. Id. In addition, the defendants note that although one basis for the plaintiff's claim was that it could be life-threatening, the plaintiff left the prison system alive and well on December 28, 2009. Id. Accordingly, the defendants assert that the plaintiff has failed to show that Dr. Proctor was deliberately indifferent to his serious medical needs. Id. at 6-7. Rather, the defendants argue that the plaintiff merely disagrees with the course of treatment provided Id. at 7. Such disagreement, argues the defendants, is not sufficient to show a violation of constitutional

dimensions.  <u>Id.</u>

As to defendant Tenney, the defendants assert that at the time period described in the complaint, Tenney was the Health Services Administrator ("HSA") for Wexford Health Services at Huttonsville Correctional Center.  <u>Id.</u>  The defendants contend that Tenney, although the HSA, is a nurse, and would not have had the authority to make medical decisions with respect to surgery or the proper course of treatment for an inmate's medical condition.  <u>Id.</u>  Moreover, the defendants point out that the plaintiff never asserts that Tenney was personally involved in any of the medical decisions related to the treatment of the plaintiff's hernia condition.  <u>Id.</u>  Finally, the defendants note that because the record shows that Dr. Proctor, the actual treating physician, was not deliberately indifferent to the plaintiff's serious medical needs, it is axiomatic that Tenney could not have been either.  <u>Id.</u>

For these reasons, the defendants assert that while the plaintiff may have desired surgery for his hernia condition while at Huttonsville, it was not medically necessary.  <u>Id.</u> at 8.  In addition, the defendants assert that while staff treated the plaintiff's condition conservatively, such treatment was appropriate.  <u>Id.</u>  Thus, the defendants assert that because there are no genuine issues of material fact, they are entitled to judgment as a matter of law.  <u>Id.</u>

### III.  <u>Standard of Review</u>

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the

nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact.  Celotex at 323.  Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party must present specific facts showing the existence of a genuine issue for trial.  *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Anderson at  256.  The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment.  *Id.* at 248.  Summary judgment is proper only "[w]here  the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Matsushita, at 587 (citation omitted).

## IV.   Analysis

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently

culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." *Id.* at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment,

conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

In this case, the material facts are not in dispute. The plaintiff was stabbed prior to his incarceration. As a result, surgery was performed and he received a colostomy. The plaintiff's surgery resulted in a large abdominal hernia.

After his incarceration at the Huttonsville Correctional Center, the plaintiff was treated by Dr. David Proctor. Dr. Proctor, in his medical opinion, found that surgical repair of the plaintiff's hernia was not necessary and prescribed a conservative (non-surgical) course of treatment which included abdominal binders. The plaintiff's condition was stabilized by the binders and the binders did not interfere with the plaintiff's colostomy.

While at Huttonsville, the plaintiff requested surgical repair of his hernia condition. He was sent for a surgical consult at West Virginia University Hospital with Dr. Graves. Although noting the size of the plaintiff's abdominal hernia, Dr. Graves found that the prescribed course of treatment, abdominal binders, was effective, and that surgery was not medically necessary unless the plaintiff's condition worsened. Moreover, Dr. Graves found that the plaintiff's colostomy was functioning properly. The plaintiff does not contend that Dr. Graves assessment of his condition was inaccurate, nor does he assert that his condition worsened after the consult.

It is clear that the plaintiff received treatment for his hernia condition. He was examined by Dr. Proctor and prescribed a course of treatment. When he requested surgery for his condition, the plaintiff was sent for a surgical consult at a local hospital. The surgical consult was in line with the

diagnosis and course of treatment prescribed by Dr. Proctor. There is no evidence that hernia surgery was medically necessary or that Dr. Proctor acted with a sufficiently culpable state of mind. Instead, it appears that the plaintiff merely disagrees with the course of treatment prescribed by Dr. Proctor. However, as noted above, a mere disagreement between an inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d at 849. The plaintiff does not allege any exceptional circumstances, nor do any appear to exist. Accordingly, the plaintiff has failed to state a claim for relief against Dr. Proctor.

As to defendant Tenney, the plaintiff makes no clear allegations that Tenney was personally involved in any violation of the plaintiff's constitutional rights.[1] Moreover, it is undisputed that although Tenney was the Health Services Administrator, he would not, as a nurse, have the authority to override the medical decisions of the treating physician regarding the necessity of surgery or the prescribed course of treatment. Nor does the plaintiff make any specific allegations of supervisory liability on Tenney's part.[2] Given these circumstances, as the defendants point out, it is axiomatic

_____

[1]Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added). "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Migdal v. Rowe Price-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted).

[2]In Miltier v. Beorn, 896 F.2d at 854, the Fourth Circuit recognized that supervisory defendants may be liable under § 1983 if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations

that Tenney could not have been deliberately indifferent to the plaintiff's serious medical needs if

Dr. Proctor, the treating physician, was not. Thus, the plaintiff has failed to allege facts sufficient

to show that defendants Tenney and Dr. Proctor were deliberately indifferent to his serious medical

needs.

## V.    Recommendation

For the reasons stated, the undersigned recommends that the respondents' Motion for

Summary Judgment (dckt. 27) be **GRANTED** and that the plaintiff's complaint (dckt. 1) be

**DISMISSED with prejudice** from the active docket of this Court.

Within **fourteen (14) days** after being served with a copy of this Report and

Recommendation, any party may file with the Clerk of Court written objections identifying those

portions of the recommendation to which objection is made and the basis for such objections. A

copy of any objections shall also be submitted to the Honorable Robert E. Maxwell, United States

District Judge. Failure to timely file objections to this recommendation will result in waiver of the

right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C.

§ 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985);

United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se*

plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket,

---

inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition
that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause
of constitutional injury." *Id.* However, the plaintiff cannot establish supervisory liability merely
by showing that a subordinate was deliberately indifferent to his needs. *Id.* Rather, the plaintiff
must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit
authorization of the offensive practice. *Id.* In reviewing claims of medical care, supervisors are
entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. *Id.*

and to counsel of record via electronic means.

DATED: July 21, 2010.

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE